UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRIZ ALONSO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>AUPAIRCARE, INC., et al.,<br><br>    Defendants. | Case No. 3:18-cv-00970-JD<br><br>**ORDER RE MOTIONS TO COMPEL ARBITRATION**<br><br>Re: Dkt. Nos. 25, 27 |

Plaintiffs Beatriz Alonso, Natalia Den Boer, and Estebaliz Geijo are citizens of Spain who moved to the United States to work as au pairs under programs operated by defendants AuPairCare, Inc. ("APC") and Cultural Homestay International, Inc. ("CHI"). Dkt. No. 12. Den Boer and Geijo participated in APC's program, and Alonso participated in CHI's program. Plaintiffs were provided with room and board by host families, and paid a fixed wage of $197.50 per week, for more than 45 hours of childcare and other work. They allege on behalf of a putative class that defendants violated California law, including minimum wage and overtime pay requirements, and seek penalties under California's Private Attorney General Act ("PAGA").

APC has moved to compel arbitration of Den Boer and Geijo's non-PAGA claims, and CHI has moved to compel arbitration of Alonso's non-PAGA claims. Dkt. Nos. 25, 27. Alonso, Den Boer, and Geijo acknowledge that they signed agreements with the defendants describing the terms and conditions of the au pair programs, including the au pair's responsibilities, hours, and pay. The agreements contain arbitration provisions that defendants argue are valid and apply to plaintiffs' claims.

**LEGAL STANDARDS**

The motions to compel are governed by the Federal Arbitration Act ("FAA"). The FAA's "overarching purpose . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Under Section 4 of the FAA, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If the party seeking to compel arbitration establishes both factors, the district court "must order the parties to proceed to arbitration only in accordance with the terms of their agreement." *Id.* Any doubts about the scope of arbitrable issues should be decided in favor of arbitration. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1139 (9th Cir. 1991).

Unless the parties provide otherwise, the validity and scope of an agreement to arbitrate are determined by the Court. *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). The validity inquiry usually involves a determination of whether the arbitration agreement is unenforceable because it is unconscionable. *See Concepcion*, 563 U.S. at 339.

Alternatively, the parties may delegate questions of validity and scope to the arbitrator. Delegation is accomplished by a "clear and unmistakable" agreement in the contract, typically in the form of a reference to arbitration rules that cover arbitrability, that is itself enforceable. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). When a delegation clause is in an arbitration agreement, the Court retains authority to determine any validity challenges directly addressed to delegation. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010); *Brennan*, 796 F.3d at 1132-33; *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 1913832, at *1-2 (N.D. Cal. Jan. 24, 2018). This is because arbitration provisions -- including delegation clauses -- are severable and separately enforceable from the remainder of a contract. *Rent-A-Center*, 561 U.S. at 70-72. If a party challenges the overall agreement to arbitrate, without specifically challenging the delegation clause, the questions of validity and enforceability will go to the arbitrator. *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL 4551484, at *1 (N.D. Cal. Oct. 11, 2017).

**DISCUSSION**

**I.      Den Boer's and Geijo's Claims**

Den Boer and Geijo signed an APC standard form contract. Dkt. No. 25-1 Exhs. B-1, B-3. The APC form contract states that "any dispute or claim arising out of the Agreement, including but not limited to any resulting or related transaction or the relationship of the parties, shall be decided by neutral, exclusive, and binding arbitration in San Francisco, California, U.S., before an arbitration provider selected by AuPairCare, upon the petition of either party. . . .  In any action, including arbitration, brought for breach of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs, including but not limited to the costs of arbitration." Dkt. No. 25-1 Exh. B-1 at 8.

Den Boer and Geijo challenge the arbitration agreement as unconscionable. They do not raise any contract formation issues. Because the arbitration agreement does not have a delegation clause, the Court will decide the unconscionability issues.

It is well-settled that an arbitration agreement can be avoided by "a defense that would be available to a party seeking to avoid the enforcement of any contract," *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005), so long as the defense does not have "a disproportionate effect on arbitration," *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (internal quotation and citation omitted). "These contract-based challenges are governed by applicable state law," *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th Cir. 2008), which in this case is California law, Dkt. No. 25-1 Exh. B-1 at 8. In California, a contract provision is unenforceable if it was "unconscionable at the time it was made." Cal. Civil Code § 1670.5(a). The party asserting unconscionability bears the burden of proof. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015).

California's unconscionability doctrine "is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party." *Id.* (internal citations and quotations omitted). "[P]rocedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree. . . . [T]he

3

more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (2016). Procedural unconscionability "focus[es] on oppression or surprise due to unequal bargaining power," while substantive unconscionability looks for "overly harsh or one-sided results." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013).

### A. Procedural Unconscionability

Procedural unconscionability is evaluated across a spectrum. "At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching." *Baltazar*, 62 Cal. 4th at 1244 (internal citations and quotations omitted). A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981).

There is no doubt that the APC au pair agreements are contracts of adhesion. They are standardized agreements presented to prospective au pairs with no opportunity for negotiation. *See, e.g.*, Dkt. No. 28-1. That is not inherently fatal to enforcement because virtually all form contracts have some degree of adhesion, and simply offering arbitration and other terms on a take-it-or-leave-it basis is not enough to find an agreement to arbitrate unenforceable. *Sanchez*, 61 Cal. 4th at 915.

But there are additional factors here that raise concerns. The agreement does not select a specific arbitrator that the parties agreed to use, and instead leaves the choice entirely up to APC with no participation by the au pair. Dkt. No. 25-1 Exh. B-1 at 8. APC's unilateral authority to determine who will be the arbitrator necessarily implies that it also has sole authority to determine the rules and procedures that will govern the arbitration. That is an important indicator of

4

procedural unfairness because it introduces an element of undue surprise in the arbitration agreement. Allowing APC to fill in these open-ended terms after a dispute arises denies an au pair a "fair opportunity to review the full nature and extent of the . . . arbitration processes to which [he or she] would be bound." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010).

Den Boer and Geijo's other procedural concerns are not as compelling. For example, plaintiffs say they believed the APC au pair agreement was identical to an agreement they had already signed with AuPairCare Spain, a separate corporate entity from defendant APC. But Den Boer was advised that the APC agreement was the "American contract." Dkt. No. 28-1 at 3. Geijo suggests that she was misled but does not attach any records of emails or messages to corroborate that. Dkt. No. 28-6 at 3. In any event, it is undisputed that Geijo and Den Boer had a fair opportunity to read the agreements before they signed. Dkt. No. 28-1 at 3; Dkt. No. 28-6 at 3. If they signed without reading the contracts first, that falls on them. *Jacobson v. Snap-on Tools Co.*, No. 15-CV-02141-JD, 2015 WL 8293164, at *3 (N.D. Cal. Dec. 9, 2015).

Den Boer and Geijo suggest that their status as Spanish nationals for whom English is a foreign language should be taken into account when weighing procedural unconscionability. But at the time Den Boer and Geijo signed the agreements, both had college degrees and were fluent enough in English to write applications for APC in English and to pass interviews conducted in English. *See* Dkt. No. 35-1. Den Boer and Geijo do not contend that they could not understand the agreements because they were in English, and there is no indication that language issues caused any additional inequalities in the parties' dealings. These undisputed facts negate the lack of sophistication concern.

Den Boer and Geijo also argue that the arbitration provision was artfully hidden. That is not the case. The entire APC au pair agreement is only eight pages long, uses plain language, and is organized by topic. *See* Dkt. No. 25-1 Exh. B-1. The arbitration provision appears on the last page before the signature page and is reasonably eye-catching. Plaintiffs say that the arbitration provision should have been included under the heading "Problem Resolution and Placement Changes" rather than under "Other Terms and Conditions," but the former deals with problems

that arise between the au pair and the host family. It was not surprising or misleading for APC to place the arbitration provision under "Other Terms and Conditions."

### B. Substantive Unconscionability

"Substantive unconscionability addresses the fairness of the term in dispute. The focus of the inquiry is whether the term is one-sided and will have an overly harsh effect on the disadvantaged party. Thus, mutuality is the paramount consideration when assessing substantive unconscionability." *Pokorny*, 601 F.3d at 997 (internal quotations and citations omitted).

Significant portions of the agreement to arbitrate indicate that it is "unreasonably favorable to the more powerful party." *Baltazar*, 62 Cal. 4th at 1244 (internal quotation omitted). To start, the provision allowing APC to define the arbitration proceedings strongly raises this concern, in addition to being procedurally unfair. By giving itself the exclusive right to define the rules of engagement and appoint the decisionmaker, APC has virtually unlimited and unreviewable power to stack the deck in its favor. The vague reference in the agreement to using a "neutral" arbitration provider is hardly a meaningful limitation on APC's untrammeled discretion. *See, e.g.*, *Zaborowski v. MHN Gov't Servs., Inc.*, 601 F. App'x 461, 463 (9th Cir. 2014) (requiring "neutral" arbitrator still granted defendant "near-unfettered discretion" to select preferred arbitrators).

The one-sidedness of the arbitration agreement arrangement is also apparent in the prevailing-party provision. The agreement states that in any action brought for breach, the prevailing party "shall be entitled" to attorney's fees and costs, including the costs of arbitration. Dkt. No. 25-1 Exh. B-1 at 8. As a general rule, a bilateral provision awarding attorneys' fees to the prevailing party is not inherently unfair. *See 23andMe*, 840 F.3d at 1024. The same cannot be said for a cost-shifting provision that might require an employee subject to a mandatory arbitration agreement to bear costs that she would not face in a court proceeding. *Id.* at 1026. The "categorical rule in the employment context" is that employers "'cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court.'" *Sanchez*, 61 Cal. 4th at 918-19 (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 110 (2000)) (emphasis in original); *see also Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 925 (9th Cir. 2013) ("no justification to ignore a

6

state cost-shifting provision, except to impose upon the employee a potentially prohibitive obstacle to having her claim heard").[1] The APC agreement contemplates exactly this type of impermissible shifting of costs.

These procedural and substantive issues are enough to conclude that the APC arbitration agreement is unenforceable on grounds of unconscionability. APC's main response to this is to propose several modifications of the agreement tailored specifically to this lawsuit. In its papers and at the hearing, APC said it would: (1) pay the arbitration expenses for Den Boer's and Geijo's individual claims (but not for any class claims, even though class claims are not precluded by the agreement); (2) designate AAA as the arbitration provider and proceed under the AAA commercial arbitration rules; and (3) not enforce the agreement's cost-shifting provision. *See, e.g.*, Dkt. No. 35 at 7.

The question, then, is whether APC can rewrite the agreement on the fly to compel arbitration in this case, or whether the agreement as worded should be deemed unenforceable. The Court has discretion to sever an unconscionable provision or refuse to enforce the agreement in its entirety. *See Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 895 (9th Cir. 2002). Declining enforcement is the better result here because the changes and deletions proposed by APC would create a new arbitration agreement the parties never bargained for or agreed to. APC's proposed changes are much more than a surgical excision of a discrete unconscionable element. They are an improper reformation of the agreement. *Armendariz*, 24 Cal. 4th at 124-25 (court is authorized to "refuse arbitration if grounds for revocation exist, not to reform the agreement to make it lawful."); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1180 (9th Cir. 2003) (declining to rewrite unconscionable arbitration provisions because that would "require this court to assume the role of contract author rather than interpreter"); *Zaborowski*, 601 F. App'x at 464. APC's litigation-driven interest in modifying the arbitration agreement is "an offer to modify the contract;

---

[1] For purposes of this motion, APC has not seriously disputed that plaintiffs' claims arise out of an employee-employer relationship. APC mentions in passing that the arbitrator might be called upon to decide whether an employment relationship exists, but that has no bearing on whether the agreement to arbitrate is enforceable in the first place.

7

an offer that was never accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it." *Armendariz*, 24 Cal. 4th at 125 (internal quotations omitted).

Declining to enforce this unconscionable arbitration agreement is wholly consistent with the language and purpose of the FAA. The FAA provides that agreements to arbitrate are subject to revocation on "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA does not give courts the power to reform an arbitration agreement where reformation is not permitted under state law. The FAA's grant is limited to compelling arbitration "in accordance with the terms of the agreement" as they actually are, not as they might have been. 9 U.S.C. § 4.

**II.   Alonso's Claims**

A different outcome is appropriate for plaintiff Alonso. Her agreement with defendant CHI states that in "the event of any dispute between the parties concerning the performance, enforcement, or interpretation of this Agreement, such dispute shall be determined by binding arbitration before the American Arbitration Association or Judicial Arbitration and Mediation Service in San Rafael, California, upon the petition of either party." Dkt. No. 27-1 Exh. A-1 at 6. California law applies because Alonso has sued in California and no party has invoked the law of another jurisdiction. *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919 (2001). CHI's motion to compel confirms that arbitration would be conducted under the employment dispute procedures of either AAA or JAMS. Dkt. No. 27 at 15.

Unlike the APC agreement, this one refers to arbitration procedures that contain an express delegation clause. The AAA and JAMS procedures for employment arbitration delegate gateway issues to the arbitrator. *See* American Arbitration Association, Employment Arbitration Rules and Mediation Procedures, Rule 6(a) (effective Nov. 2009); Judicial Arbitration and Mediation Service, Employment Arbitration Rules & Procedures, Rule 11(b) (effective July 2014). In light of these delegation clauses, the Court's role is limited to resolving any formation defenses, or validity defenses that are specific to the delegation clause itself. Validity defenses that are not specific to the delegation clause but that go to the validity of the agreement to arbitrate must be

8

considered by the arbitrator in the first instance. *McLellan v. Fitbit, Inc.*, 2018 WL 1913832, at *1.

Alonso's opposition to CHI's motion to compel has little to say about the delegation of arbitrability, even though CHI expressly raised it. *See* Dkt. No. 27 at 10. Alonso's sole reference to delegation comes at the end of her opposition, where she states, "There is no specific provision in CHI [sic] agreement that unmistakably provides for the issue of arbitrability to be decided by the arbitrator." Dkt. No. 39 at 14. Alonso appears to suggest that arbitrability cannot be delegated unless a delegation clause is expressly included in the agreement. But it is well-established that delegation clauses can be incorporated by reference, even into contracts of adhesion. *McLellan v. Fitbit, Inc.*, 2017 WL 4551484, at *2. Other than that, Alonso's opposition does not discuss delegation, and instead raises validity challenges that go to the agreement as a whole.

Alonso also says that her labor code claims do not concern the "performance, enforcement, or interpretation" of the CHI agreement. *See, e.g.*, *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010). But under both AAA and JAMS rules, the scope of the agreement to arbitrate is for the arbitrator to decide.

Consequently, CHI's motion to compel arbitration of Alonso's non-PAGA claims is granted. Arbitration will proceed under the employment procedures of either AAA or JAMS. Alonso's validity challenges will go to the arbitrator in the first instance. CHI did not move to compel arbitration of Alonso's PAGA claim and requests that the Court stay that claim while arbitration proceeds. Alonso did not oppose that request or address the PAGA claim in her papers. The Court will consequently stay Alonso's PAGA claim pending arbitration.

**CONCLUSION**

APC's motion to compel arbitration of Den Boer and Geijo's claims is **DENIED**. CHI's motion to compel arbitration of Alonso's non-PAGA claims is **GRANTED**. Alonso's PAGA claim is stayed pending the arbitration. CHI and Alonso are directed to provide the Court with joint status updates on the arbitration proceedings **every 90 days**.

**IT IS SO ORDERED.**

Dated: August 23, 2018

JAMES DONATO
United States District Judge